IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JENNIFER R. FERGUSON,                          )
                                               )      CASE NO. 3:20-CV-2076
                                               )
              Plaintiff,                        )      JUDGE JEFFREY J. HELMICK
                                               )
       vs.                                      )
                                               )      MAGISTRATE JUDGE
                                               )      JONATHAN D. GREENBERG
                                               )
COMMISSIONER OF SOCIAL                          )
SECURITY,                                       )
                                               )      **REPORT & RECOMMENDATION**
              Defendant.                        )

Plaintiff, Jennifer Ferguson ("Plaintiff" or "Ferguson"), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In April and July 2018, Ferguson filed applications for POD, DIB, and SSI, alleging a disability onset date of October 26, 2015 and claiming she was disabled due to: lymphocytic colitis, leaky gut, silent reflux, malrotation of stomach, migraine, depression, anxiety, tinnitus, hearing impairment, and diarrhea. Transcript ("Tr.") at 165, 395. The applications were denied initially and upon reconsideration, and Ferguson requested a hearing before an administrative law judge ("ALJ"). Tr. 307.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

On June 20, 2019 an ALJ held a hearing, during which Ferguson, represented by counsel, and an impartial vocational expert ("VE") testified.  Tr. 185-233.  On October 2, 2019, the ALJ issued a written decision finding that Ferguson was not disabled.  Tr. 165-179.  The ALJ's decision became final on July 21, 2020, when the Appeals Council declined further review.  Tr. 1-3.

On September 15, 2020, Ferguson filed her Complaint to challenge the Commissioner's final decision.  Doc. No. 1.  The parties have completed briefing in this case.  Doc. Nos. 16, 18, 20. Ferguson asserts the following assignments of error:

(1)  The ALJ failed to properly evaluate Plaintiff's severe impairment of lymphocytic colitis.

(2)  The ALJ's reliance upon the lack of abnormal testing results yielded from Plaintiff's lymphocytic colitis when evaluating Plaintiff's credibility as to frequency, duration and/or severity of said conditions, establishes a basis for remand to consider medical treatment rendered after the hearing and expiration of claimant's date last insured.

Doc. No. 16, p. 2.

## II. EVIDENCE

### A.    Personal and Vocational Evidence

Ferguson was born in 1977 and was 38 years old on her alleged disability onset date, making her a "younger" person under social security regulations.  Tr. 177.  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). She has at least a high school education and is able to communicate in English.  Tr. 177.  She has past work as a licensed practical nurse and a composite job of registered nurse and nurse supervisor.  Tr. 177.

### B.    Relevant Medical Evidence[2]

### 1. Evidence considered by the ALJ

In July 2015, Ferguson saw Jill Badik, D.O., for a follow up for her anxiety.  Tr. 57.  She reported problems with her bowels, going from one extreme (constipation) to the other (diarrhea).  Tr.

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

527.  Upon exam, she was well nourished, "healthy appearing," and her abdomen was soft and non-tender.  Tr. 530.

In October 2016, Ferguson went to the Veterans Affairs Medical Center ("VA") to establish care for her physical and psychiatric complaints, including her allegations of constipation and diarrhea.  Tr. 733-737.  At a mental health visit at the VA Center in November 2016 she reported a poor appetite and feeling nauseated all the time.  Tr. 719-720.  She had a chest x-ray on November 23, which showed an increase in streaky opacities in the medial aspect of her left lower lung in the retro-cardiac region on the frontal view with some corresponding changes seen at the lung base posteriorly on the lateral view.  Tr. 546.  Those findings "could represent some infectious and inflammatory changes involving the left lower lobe" of the lung and clinical correlation and follow-up were recommended.  Tr. 546.

On December 12, 2016, Ferguson had a CT scan of her neck due to tracheal stenosis, history of being choked, and spasms in her throat.  Tr. 541-542.  The study showed mild asymmetric effacement of the right greater than left vallecular spaces "likely relate[d] to mucosal thickening."  Tr. 542.  An MRI of her auditory canals showed a few scattered foci of hyperintense T2/flair signals involving the periventricular and subcortical white matter, nonspecific in nature, but greater than expected for Ferguson's age.  Tr. 545.  Those findings could relate to her history of migraine headaches, although additional etiologies such as sequelae of prior trauma or infection, inflammatory process, demyelinating disease, or vasculitis could have a similar appearance.  Tr. 545.

On January 4, 2017, Ferguson had a laryngoscope due to waking up at night with difficulty breathing, coughing during the day, and occasional heartburn.  Tr. 691-692.  The results were mild swelling of the arytenoids.  Tr. 693.  She was assessed with laryngopharyngeal reflux with possible associated laryngospasm causing sudden feelings of shortness of breath.  Tr. 693.  She was prescribed omeprazole and advised to stop smoking.  Tr. 693.  A chest CT scan on January 12 showed scattered

3

granulomas in her lungs. Tr. 540-541.

On October 6, 2017, Ferguson went to the VA Center for a gastroenterology consultation with gastroenterologist Ngoc-Duyen Dang, M.D. Tr. 845. She reported a history of acid reflux and daily nausea/vomiting beginning in 2012 and stated that she had lost 20 pounds at that time. Tr. 846. An EGD showed duodenitis in 2014. Tr. 846. Her symptoms had abated and returned 1-2 years later. Tr. 846. She now experienced daily nausea and diarrhea at least 6 times a day, worse in the morning. Tr. 846. A January 2017 gastric emptying study had found that she had normal gastric emptying at one and four hours post-ingestion, but more rapid than normal emptying at two hours post-ingestion. Tr. 846, 537-538. She drank "a lot" of regular soda and coffee every day. Tr. 846. She had been given differential diagnoses including "IBD" due to her diarrhea at night, although she lacked other classic symptoms such as abdominal pain and/or weight loss (she had gained 50 pounds in recent years). Tr. 846, 849.

On November 3, 2017, Ferguson had a CT scan of her abdomen and pelvis that detected possible mild inflammatory bowel disease and possible congenital bowel mal-rotation. Tr. 535-536.

On November 15, 2017, Ferguson saw her primary care physician at the VA Center for a follow up and complained of a number of issues, including experiencing diarrhea most days, especially in the morning, and vomiting, "although less than before." Tr. 623. Later that month at a mental health appointment, Ferguson reported waking up at night to vomit and having to nap during the day. Tr. 614. She reported having a poor appetite but had gained ten pounds in the last few months. Tr. 614.

A biopsy taken of Ferguson's right and left colon in December 2017 was consistent with lymphocytic colitis, which was described as "a form of Irritable Bowel Disease (IBD)." Tr. 561-562, 595. Rectum biopsies revealed fragments of rectal mucosa with minimal prolapse type changes and fragments of hyperplastic polyps. Tr. 562. An upper endoscopy biopsy did not detect any

4

abnormalities. Tr. 596.

On March 7, 2018, Ferguson had a nutrition consultation. Tr. 570. She reported that she often skipped meals and drank large amounts of caffeine and carbonated beverages. Tr. 571. The dietitian recommended eating smaller meals more often, switching to decaffeinated coffee, and avoiding soda. Tr. 572. She was advised to follow a low FODMAP diet.[3] Tr. 570-571. On March 9, Ferguson saw Dr. Dang and expressed frustration over the lack of options to manage her fluctuating constipation/diarrhea. Tr. 569. Dr. Dang observed that she had had a nutrition consult, adjusted her medications, and advised her to follow up in one month. Tr. 569.

On April 20, 2018, Ferguson followed up with Dr. Dang and reported that her recently added medication gave her migraines. Tr. 770. Dr. Dang ordered a trial of a new medication and completed her disability paperwork. Tr. 770. In a Lucas County Employability Form, Dr. Dang opined that Ferguson was capable of performing work on a full-time basis but that her diagnosis of lymphocytic colitis and "IBS" would require an accommodation: frequent breaks and unlimited access to a restroom. Tr. 761. In a pharmacology note regarding Ferguson's new medication following that visit with Dr. Dang, the writer observed that Ferguson was unlikely to respond to the new medication well without dietary intervention and that "there is no obvious action on her part to make changes in this." Tr. 771.

On July 27, 2018, Ferguson saw Dr. Jeremy Louissaint in the gastroenterology department complaining of fluctuating diarrhea and constipation. Tr. 1261. The recent medication trial did not help her symptoms. Tr. 1260. Ferguson "was told about a low FODMAPs diet in the past but did not feel her current dietary habits would allow for adherence….she notes drinking at least 1 L of regular soda daily." Tr. 1260-1261. Upon exam, her abdomen was soft, non-distended, and "mildly tender only to

---

[3] FODMAP stands for Fermentable Oligosaccharides, Disaccharides, Monosaccharides and Polyols. Tr. 172. A low FODMAP diet is an elimination diet used to evaluate and treat GI diseases. *See* Shanti Eswaran, *What is the Low-FODMAP Diet? When is a low-FODMAP diet recommended?* American College of Gastroenterology (March 2021), https://gi.org/topics/low-fodmap-diet/ (last visited 10/12/21).

deep palpation." Tr. 1261.  Dr. Louissaint opined that her symptoms were caused by her untreated lymphocytic colitis along with underlying poorly controlled "IBS-mixed." Tr. 1262.  She was advised to follow a FODMAP diet and reduce/eliminate her intake of regular soda, "the latter she was very resistant to." Tr. 1262.

On August 13, 2018, Ferguson sought treatment at the VA Center for multiple issues, including lower extremity swelling and frequent diarrhea, nausea and vomiting. Tr. 1254-1255.  She continued to report that she "eats only one meal per day and drinks coffee and pop for the large part of the day." Tr. 1255.  On August 22 an esophagram and upper GI study was performed to evaluate for a possible midgut malrotation and the results were normal: no esophageal strictures, diverticula, abnormal filing defects; no cause for delay in gastric emptying; and no evidence of midgut malrotation. Tr. 1410-1411.

On December 21, 2018, Ferguson had a follow-up appointment with her primary care physician and was "upset that no diagnosis or treatment is established and helped her" GI issues. Tr. 1488.  She was looking for a second opinion. Tr. 1488.  She reported experiencing diarrhea 10-20 times a day with cramping and urgency. Tr. 1488.  She was concerned about her weight gain. Tr. 1488.  Upon exam, her abdomen was soft and she had pain in her mid-right and lower abdomen. Tr. 1489.

At a follow up on February 26, 2019, Ferguson had a skin rash and diarrhea; she was referred to an infectious disease specialist, whom she saw on March 21, for possible eosinophilia. Tr. 1478, 1442. Ferguson reported her history and described having loose, liquid like stool at least 6 to 8 times during the day and 4 times throughout the night, with fecal urgency and incontinence. Tr. 1442.  She had "stopped seeing GI when she felt they treated her like a 'head case.'" Tr. 1442.  Regarding her diet, she "observes mostly ketogenic with cabbage, brussel sprout, organic meat," and she drank ½ a pot of coffee a day and 2 liters of soda every 3-4 days. Tr. 1443.  She was taking vitamin D, omeprazole, Phenergan, and tums. Tr. 1443.  After lab work, infectious disease was deemed unlikely and it was observed that,

regarding her GI issues, "there may be a component of IBS that confounds the picture as well" and the correlation between her symptoms and her anxiety was discussed. Tr. 1445. She was advised to return to GI to try other therapies for management of her lymphocytic colitis. Tr. 1445.

On May 6, 2019, Ferguson saw gastroenterologist Dr. Jennifer Maratt, M.D., at the VA Center. Tr. 1437. She reported diarrhea with lower abdominal cramping, often times being unable to make it to the bathroom. Tr. 1438. She could not lay on her right side due to gastroesophageal reflux disease (GERD). Tr. 1438. She was drinking one pot of coffee a day and 2 liters of soda a day. Tr. 1438. She also reported nausea, bloating, lower extremity edema, night sweats, and having gained fifty pounds. Tr. 1438. Upon exam, her abdomen was soft, non-tender, not distended, and she had normal bowel sounds. Tr. 1438. She had no edema. Tr. 1438. Dr. Maratt ordered an abdominal x-ray, which showed no dilated air-filled loops of small or large bowel to suggest obstruction, no evidence of free intraperitoneal air, and a small amount of stool throughout the large bowel. Tr. 1438, 1408. She was advised to start psyllium and daily Protonix, cut down on her coffee and soda intake, and the role of caffeine as a GI tract stimulant was discussed. Tr. 1439-1440.

### 2. Evidence submitted to the Appeals' Council

On July 24, 2019, Ferguson visited the University of Michigan Allergy Clinic for an evaluation of low lgG (antibody) levels in her blood. Tr. 41. Dr. Hosler summarized Ferguson's history and listed her diagnoses as hypogammaglobulinemia, lymphocytic colitis, and frequent infections. Tr. 44.

Ferguson followed up on September 25, 2019, for a rash and was diagnosed with polymorphic light eruption (rash due to sun exposure). Tr. 48-49. Dr. Hosler remarked that, despite Ferguson's report that she had 6-50 bowel movements a day, "she has only lost 11 oz from last visit 7/24/19." Tr. 56. Lab work was performed and Ferguson was diagnosed with hypogammaglobulinemia, natural killer (NK) cell deficiency, and eosinophilia. Tr. 55. An anorectal manometry with balloon expulsion test

was performed; the result was abnormal, and physical therapy was suggested for pelvic floor neuromuscular reeducation and rectal sensory balloon retraining.  Tr. 57-58.

On November 18, 2019, Ferguson returned to the gastroenterology clinic at the VA Center.  Tr. 21.  The treatment note discussed her recent history, including that she had seen hematology for her eosinophilia; her blood count showed a mild elevation of eosinophil (the same since 2017) and the etiology was thought to be secondary in nature, in reaction to other phenomena.  Tr. 22.  She had not taken Protonix for her GERD or tried psyllium as she had been instructed.  Tr. 22.  She reported having a poor appetite and eating once a day; despite this, her weight had been steady.  Tr. 23.  She had stopped drinking coffee and soda about a month prior and her diarrhea had not improved.  Tr. 23.  She continued to have diarrhea daily, sometimes up to six movements in 1 hour, and nocturnal fecal incontinence.  Tr. 23.  She did not eat 24 hours prior to medical appointments to ensure she does not have an accident.  Tr. 23.  She had nausea and vomiting at least weekly, sometimes up to 3 times a week.  Tr. 23.  Since her last visit, a colonoscopy was negative for microscopic colitis.  Tr. 23.  She had been eating a lot of cheese lately and her "heartburn is out of control."  Tr. 23.  Her diarrhea was not as runny and with more constipation and she had been eating granola bars to help with a bowel movement.  Tr. 23.  She was prescribed dicyclomine for diarrhea, counseled on a healthy diet, and advised to continue to avoid caffeine.  Tr. 25-26.  An IBS-mixed syndrome was suspected and Ferguson was instructed to track her diet and stools for 30 days.  Tr. 26.  It was observed that her status will need to be reassessed to determine if there was a component of pelvic floor weakness.  Tr. 25.

C.    **State Agency Reports**

On June 4, 2018, Abraham Mikalov, M.D., opined that Ferguson could perform light work with restrictions on her ability to perform postural activities and tolerate environmental conditions.  Tr. 241-43.  Dr. Mikalov recognized Ferguson's diagnosis of lymphocytic colitis but did not find that she

required any bathroom-related restrictions because she had no evidence of malnutrition or electrolyte disturbances.  Tr. 243.  On September 5, 2018, Indira Jasti, M.D., adopted Dr. Mikalov's findings and observed that Ferguson's August 2018 upper gastrointestinal study was normal, that her appetite was "fairly poor," and that she eats only one meal and drinks coffee and soda pop.  Tr. 259-261.

**D.    Hearing Testimony**

During the June 20, 2019 hearing, Ferguson testified to the following:

- She lives in a house with her two sons (a 10-year-old and an adult).  Tr. 190-191.  She has a driver's license and is able to drive.  Tr. 194

- She has a nursing degree and last worked as an RN and supervisor in a hospital in October 2015.  Tr. 195-196.  The heaviest item she had to lift were patients.  Tr. 196.

- While working in 2014, she began to feel hot and she would cough and vomit.  Tr. 204.  She stopped vomiting regularly in 2014 after she had an EGD.  Tr. 213.  In October 2015 she became unable to control her bowels.  Tr. 214-215.

- She had not eaten for a day and a half prior to the hearing so that she could come to the hearing and not be nauseated and running to the bathroom.  Tr. 209-210.  She had had diarrhea for two hours the morning of the hearing.  Tr. 210.  When she has a bowel movement it doesn't feel like she empties all the way.  Tr. 211.  They tried giving her medication to stop the diarrhea, but then she gets constipated and vomits.  Tr. 211.

- She has been diagnosed with leaky gut, lymphatic colitis, GERD, and they told her that she has a mal-rotated stomach.  Tr. 212.

- She drinks Coke because it is the only thing that stays down and doesn't turn her stomach.  Tr. 212.

- Since she stopped working in October 2015, her condition has gotten worse and she has gained 50 pounds.  Tr. 218.  She vomits once a week and has uncontrolled diarrhea every day, at least 8-10 episodes.  Tr. 219.  She has accidents while in bed and wears a diaper when she goes out, but it doesn't work well.  Tr. 220.

- She has had diagnostic work done but has had no procedures to correct her problem. Tr. 220.  She has been on numerous medications but now only takes Phenergan, which helps her migraines.  Tr. 221-222.  Some medications controlled her diarrhea but caused severe constipation.  Tr. 221.

The VE testified that Ferguson had past work as a licensed practical nurse and a composite job of registered nurse and nurse supervisor.  Tr. 177.  The ALJ asked the VE whether a hypothetical

9

individual with the same age, education and work experience as Ferguson could perform her past work or any other work if the individual had the following residual functional capacity: she could perform a full range of light work except she can frequently climb ramps or stairs but never ladders, ropes or scaffolds; can frequently crouch and crawl; can never be exposed to loud noise; can perform simple, routine and repetitive tasks but not at a production rate pace; she can have no more than occasional changes in the work setting and any changes should be well-explained in advance.  Tr. 228-229.  The VE testified that the hypothetical individual would not be able to perform Ferguson's past work but could perform the following representative jobs in the economy: cleaner, merchandise marker, and office helper.  Tr. 229.  The ALJ asked the VE if there were jobs the hypothetical individual could perform in the sedentary range of work and the VE answered that such an individual could perform the jobs of information clerk and document preparer.  Tr. 230.  When asked about normal breaks, absenteeism, and off-task behavior, the VE stated that normal breaks are two 15-minutes breaks and a 30-minute lunch, and that an individual could not miss more than one day of work a month or be off-task more than 10% of the workday.  Tr. 230.

Ferguson's attorney asked the VE about an employer's tolerance for unscheduled breaks and the VE stated that an individual whose unscheduled breaks interrupt the workflow or work progress is subject to dismissal depending on how severe the disruption is.  Tr. 231-232.

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).  A claimant is entitled to a POD only if: (1) she

10

had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that **s**he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

11

Here, Ferguson was insured on the earliest possible disability onset date, October 26, 2015, and remained insured through December 31, 2020, her date last insured ("DLI."). Tr. 165. Therefore, in order to be entitled to POD and DIB, Ferguson must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since October 26, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: lymphocytic colitis; hearing loss; and affective and anxiety disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can frequently climb ramps or stairs, She can never climb ladders, ropes, or scaffolds; She can frequently crouch and crawl; She can never be exposed to loud noise; With respect to carrying out instructions, she is limited to performing simple, routine and repetitive tasks, but not at a production rate pace; There should be no more than occasional changes in the workplace tasks and setting, and any changes should be well-explained in advance.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July **, 1977 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 26, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 167-178.

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not

13

subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

# VI. ANALYSIS

## A. The ALJ did not err when evaluating Ferguson's lymphocytic colitis

Ferguson argues that the ALJ found that she had the severe impairment of lymphocytic colitis but did not correctly evaluate that impairment.  Doc. No. 16, p. 16.  She complains that the ALJ "incorrectly called it a form of irritable bowel syndrome—which it is not."  Doc. No. 16, p. 16.  She submits that lymphocytic colitis "is a very serious medical condition which can cause severe symptoms," and that it is a form of "microscopic colitis where white blood cells (lymphocytes) increase within the colon tissue causing inflammation of the large intestine resulting in persistent watery diarrhea" and is considered an "inflammatory bowel disease," not an "irritable bowel syndrome."  Doc. No. 16, pp. 16-17; Doc. 20, pp. 2-3.[4]

The ALJ acknowledged that Ferguson had lymphocytic colitis diagnosed *via* a biopsy of her colon and referenced her lymphocytic colitis throughout the decision.  Tr. 167, 170, 171, 173.  The ALJ considered whether Ferguson met or equaled Listing 5.06, "inflammatory bowel disease" (Tr. 168) and referenced a CT scan as showing findings consistent with "mild inflammatory bowel disease" (Tr. 171).  The treatment note diagnosing Ferguson with lymphocytic colitis called it a "form of Irritable Bowel Disease (IBD)" (Tr. 595), a treatment note that the ALJ cited (Tr. 171, citing Exhibit 3F/64).  Even Ferguson refers to her impairment as "persistent and ongoing bowel irritability."  Doc. No. 16, p. 6.  The fact that the ALJ called Ferguson's lymphocytic colitis a form of irritable bowel syndrome rather than an inflammatory bowel disease is not reversible error where, as here, Ferguson has not identified a substantive error in the ALJ's evaluation of her lymphocytic colitis.

Ferguson asserts that lymphocytic colitis is "extremely difficult to diagnose" and details the tests

---

[4]  Ferguson cites the following websites explaining lymphocytic colitis and the difference between inflammatory bowel disease an irritable bowel syndrome: https://www.mayoclinic.org/diseases-conditions/microscopic-colitis/symptomscauses/syc-20351478; https://rarediseases.info.nih.gov/diseases/6939/lymphocytic-colitis; https://www.crohnscolitisfoundation.org/what-is-ibd/ibs-vs-ibd (last visited 10/12/21).

she underwent to diagnose it (Doc. No. 16, p. 18), but there is no dispute that Ferguson was diagnosed

with lymphocytic colitis after a biopsy of her colon; the ALJ recognized that fact.  Tr. 171, 173.

However, a diagnosis, alone, does not establish disability.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.

1988) ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the

condition.").

The ALJ's decision involved a thorough discussion of Ferguson's lymphocytic colitis diagnosed

in December 2017 and he found the following, objective evidence to be inconsistent with the degree of

symptom severity alleged by Ferguson:

- A previous gastric emptying study exhibited phase gastric emptying was normal at one-hour post ingestion and only more rapid than normal range at two hours while there was no evidence of gastroesophageal reflux.

- A CT of the abdomen and pelvis revealed findings consistent with *mild* inflammatory bowel disease shortly before the biopsy was taken in November 2017.  The colonoscopy and upper GI endoscopy were also normal with ilium, esophagus, stomach and duodenum all normal and the colonoscopy examination normal on direct and retro flexion views in December 2017.

- The claimant underwent another upper GI towards the end of August 2018, which was normal with no esophageal strictures, diverticula, hiatal hernia or abnormal filling defects and the visualized anatomy not appearing to cause delay in gastric emptying. A radiologic image of the abdomen, in May 2019, showed only a small amount of stool throughout large bowel with no dilated air-filled loops of small or large bowel to suggest obstruction and no evidence of free intraperitoneal air.

- Examinations by the claimant's primary care and gastroenterology providers also failed to reveal the significant abnormalities consistent with intense and disabling issues…. In fact, examinations rarely displayed the claimant having abdominal tenderness, and it was mild in nature if demonstrated at all; the abdominal exams ordinarily reflected the abdomen as soft, non-tender without distention, guarding or rebounding while bowel sounds were normoactive. The claimant's body mass index also remained in the obese range in spite of the allegations of diarrhea, vomiting and nausea whenever the claimant ate food. The above objective evidence fails to show the significant abnormalities consistent with intense and disabling symptoms.

Tr. 171-172 (emphasis in original, record citations omitted).

Ferguson argues that the ALJ should not have considered objective evidence because many

16

lymphocytic colitis patients "will yield normal results from colonoscopy and flexible sigmoidoscopy testing." Doc. No. 16, p. 18; Doc. No. 20, pp. 3-4. She likens lymphocytic colitis to fibromyalgia and contends that, like fibromyalgia, lymphocytic colitis is "unlike [other] medical conditions that can be confirmed by objective testing" and that "patients present no objectively alarming signs." Doc. No. 16, p. 18. She urges the Court to adopt a standard of review for lymphocytic colitis cases that courts must use for fibromyalgia cases that emphasizes the "symptoms associated with the condition…rather than the underlying condition itself." Doc. No. 16, p. 18. She relies on case law discussing fibromyalgia and likens her case to those cases. Doc. No. 16, pp. 18-23.

Ferguson's argument is without merit. First, her assertion that lymphocytic colitis is like fibromyalgia in that they both cannot be confirmed by objective testing is nonsensical because lymphocytic colitis is diagnosed by objective testing—a biopsy—and Ferguson had a biopsy and was diagnosed. Next, Ferguson herself lists the "hallmark symptoms" of lymphocytic colitis as "abdominal pain, cramps or bloating, nausea and fecal incontinence, which symptoms are said to come and go frequently." Doc. No. 16, p. 17. But she does not dispute that the majority of her physical exams found her to have no abdominal pain or cramping and that none showed bloating or abnormal bowel sounds, as the ALJ observed, *i.e.*, she lacked those "hallmark symptoms." Tr. 172 (citing, *e.g.*, Tr. 624, 637, 646, 661, 1255, 1439, 1478, 1489); see also Tr. 674, 699, 1444, 1469. It was not error for the ALJ to remark upon this, nor was it error for the ALJ to remark upon her stable, obese weight despite her allegations of diarrhea, vomiting and nausea whenever she ate food. The ALJ's reliance upon objective evidence to evaluate the severity of Ferguson's alleged symptoms was proper. *See* 20 C.F.R. § 404.1529(a) (a claimant's statements of pain or other symptoms alone are not sufficient to establish the existence of a physical or mental impairment or disability); SSR 16-3p, 2017 WL 5180304 at *7-8 (to evaluate a claimant's statements regarding symptoms, an ALJ considers the claimant's complaints along with the

17

objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence); *see also Mausser v. Saul*, 504 F. Supp. 3d 722, 724 (N.D. Ohio 2020); (the ALJ's reliance upon mild, objective exam findings (soft, non-tender abdomen with no distention) to support the conclusion that the claimant's alleged restriction from symptoms of Crohn's disease (needing excessive restroom breaks) was not supported by the evidence was proper).  And, as discussed below, the ALJ did not rely on objective evidence alone when evaluating the severity of Ferguson's symptoms.

Next, as defendant asserts, Ferguson's argument that lymphocytic colitis is like fibromyalgia is groundless.  Doc. No. 18, p. 13.  "Fibromyalgia's 'causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.'"  *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 434–35 (6th Cir. 2013) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Accordingly, there is a special Agency ruling to provide guidance on how to evaluate fibromyalgia in disability claims.  *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  In contrast, lymphocytic colitis symptoms are not entirely subjective and there is no special Agency ruling devoted to its evaluation. Therefore, the fibromyalgia cases Ferguson relies upon to support her position and her attempts to evaluate her lymphocytic colitis under the analytical framework of fibromyalgia cases are irrelevant.[5] Doc. No. 20, pp. 18-23.

Moreover, the ALJ did not rely on the objective medical evidence alone; he also considered Ferguson's treatment history:

> Further, the claimant's treatment history is not consistent with her symptoms being ongoing and debilitating since the alleged onset date. The claimant was consistently encouraged to follow the Fermentable Oligosaccharides, Disaccharides, Monosaccharides and Polyols (FODMAPs) diet following her diagnosis in order to reduce her symptoms, but she was very resistant and unmotivated to change (Exhibit 9F/11-13). Her gastroenterology provider as well repeatedly discussed with the claimant the need to cut down or eliminate soda with the claimant instead maintaining and/or increasing her soda intake to one to two liters a day.[] She was also not always compliant with regard to her medication usage for her irritable bowel symptoms.[]

---

[5] Even so, under the framework for evaluating the severity of a claimant's symptoms for fibromyalgia, an ALJ considers objective medical evidence.  SSR 12-2p, 2012 WL 3104869, at *5.

18

Tr. 172 (footnotes citing the record omitted).  Regarding Ferguson's non-compliance with medication, the ALJ cited the following transcript pages: Tr. 1255, 1290 (treatment notes indicating that Ferguson had been prescribed medication for her recent diagnosis of microscopic colitis but hadn't started taking it); Tr. 1438-1439 (treatment note indicating that Ferguson had stopped taking her mental health medications and denied that her mental health complaints contributed to her GI issues).  Ferguson does not contest those findings.  The ALJ's reliance upon Ferguson's treatment history to support his conclusion that her symptoms were not as severe as alleged was proper.  *See* 20 C.F.R. § 404.1529(c)(3) (when evaluating symptoms, the ALJ considers the claimant's treatment); *see also Soto v. Comm'r of Soc. Sec.*, 2014 WL 1576867, at *8 (N.D. Ohio Apr. 18, 2014) ("Non-compliance is an appropriate ground for adversely assessing a claimant's credibility."); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled[.]").  Ferguson does not allege that she had a good reason for failing to follow her prescribed treatment.

Finally, when discounting Dr. Dang's opinion that Ferguson needed a work accommodation for frequent and unlimited access to a bathroom, the ALJ observed that a gastric emptying study in 2017 exhibited solid phase gastric emptying to be normal at one-hour post ingestion and only more rapid than normal range at two hours; that another GI study visualized anatomy that "did not appear to cause delay in gastric emptying in August 2018," and a radiologic image of her abdomen in May 2019 "revealed that there was only a small amount of stool throughout the large bowel, with no dilated air-filled loops of small or large bowel to suggest obstruction and no evidence of free intraperitoneal air."  Tr. 173. Ferguson does not challenge the ALJ's evaluation of Dr. Dang's opinion or the ALJ's adoption of the state agency reviewing physicians' opinions.

In her reply brief, Ferguson maintains that the ALJ erred when he considered diagnostic testing in the record because only a biopsy can diagnose lymphocytic colitis (Doc. No. 20, p. 5) and continues

to ignore the fact that the ALJ cited those tests as a reason to discredit Dr. Dang's opinion that she needed frequent, unlimited access to a bathroom.  She concedes that the ALJ's observation of normal exam and diagnostic findings, weight gain, and her failure to follow a prescribed diet are "pertinent," but argues that those facts do not demonstrate the severity of her symptoms or negate her need to have frequent and unlimited access to a bathroom.  Doc. No. 16, p. 20.  But the ALJ found otherwise and his determination was not erroneous.  *See Lawrence v. Comm'r of Soc. Sec.*, 2016 WL 7229370, at *10 (N.D. Ohio Dec. 14, 2016) (the claimant "disagrees with the ALJ's decision and asks this Court to reweigh the evidence in her favor.  This the Court cannot do.").

In essence, Ferguson urges the Court to apply a *per se* rule—because she was diagnosed with lymphocytic colitis and alleged disabling diarrhea, she must be found disabled.  She cites no legal authority for her position and the legal authority cited above cuts against her position.  Her claim that the ALJ erred when evaluating her lymphocytic colitis fails.

## B. Ferguson is not entitled to a Sentence Six remand

Ferguson reiterates her argument that the ALJ erred when he relied on objective evidence to evaluate her lymphocytic colitis and argues that that error "establishes a basis for admitting medical records pertaining to treatment rendered following the written decision and the expiration of [her] date last insured into the record for further consideration on remand."  Doc. No. 16, p. 24.  That argument fails because the ALJ did not err, as described above.  To the extent she seeks a remand for the ALJ to consider new evidence pursuant to sentence six, she does not show that she is entitled to a remand.

Sentence six of 42 U.S.C. § 405(g) allows a court to remand to the agency to develop additional evidence in the record, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding."  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (quoting § 405(g)); *Foster v. Halter*, 279 F.3d 348, 357

20

(6th Cir. 2001).  In a sentence six remand, the plaintiff has the burden to demonstrate that the evidence she now presents in support of a remand is "new" and "material" and that there was "good cause" for her failure to present it in the prior proceedings.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276-277 (6th Cir. 2010) (although the evidence that the claimant sought to introduce was "new," the claimant failed to meet her burden of showing "good cause" for failure to submit it and that the evidence was "material."). Evidence is new "only if it was not in existence or available to the claimant at the time of the administrative proceeding"; material "only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence"; and a claimant shows good cause "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Id*. at 276 (quoting *Foster*, 279 F.3d at 357 (internal quotations omitted)).  A sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio Jan. 18, 2011) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)).

Here, Ferguson does not show good cause for her failure to present her new evidence.  Her hearing was held on June 20, 2019 and the ALJ's decision was issued on October 2, 2019.  She does not explain why she did not attempt to submit her new evidence from July and September 2019 to the ALJ. *Ferguson*, 628 F.3d at 276-277 (although the evidence that the claimant sought to introduce was "new," the claimant failed to meet her burden of showing "good cause" for failing to submit it).

With respect to whether the new evidence is material, Ferguson asserts that it shows she was diagnosed with "eosinophilia, pelvic dyssynergia, hypogammaglobulinemia and natural killer (NK) cell deficiency, establishing an immunodeficiency disorder."  Doc. No. 16, p. 24.  Although it appears that

21

she was diagnosed with eosinophilia in September 2019, a treatment note from November 2019 states that her blood count indicated that her eosinophilia was mild, her levels had not changed since 2017, and that its etiology was secondary in nature in reaction to other phenomenon. Tr. 22. Thus, she has not shown that her diagnosis of eosinophilia is material, *i.e.*, there is a reasonable probability that the ALJ would have reached a different conclusion had he been presented with that evidence. Regarding her pelvic dyssynergia, the record shows that physical therapy was recommended to reeducate her pelvic floor muscles. Tr. 57-58. Ferguson provides no follow up records; it cannot be said that that diagnosis is material. And she does not show a reasonable probability that the ALJ would have reached a different disposition of her claim if presented with the new evidence regarding her hypogammaglobulinemia and NK cell deficiency diagnoses. A diagnosis, alone, does not establish disability, *Higgs*, 880 F.2d at 863, and Ferguson does not state how her new diagnoses affect her claim that she was disabled. In fact, the new evidence shows that Ferguson continued to ignore treatment advice, which was influential in the ALJ's denial of her claim. See Tr. 22 (November 2019 treatment note indicating that Ferguson had not taken her GERD medication or tried psyllium as instructed and that, although she stopped drinking coffee and soda for about the last month, she continued to eat only once a day, including foods that aggravated her heartburn, sending it "out of control.").

. Finally, Ferguson's bald assertion that the new evidence shows that her symptoms "continue[d] to deteriorate after the hearing date" (Doc. No. 16, p. 24), without describing evidence of symptoms or providing an explanation, is not well-taken. And, as defendant notes, if Ferguson's condition worsened after the ALJ's decision, the appropriate remedy would be to initiate a new claim for benefits, not request a sentence six remand. Doc. No. 18, p. 19 (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)). Ferguson is not entitled to a sentence six remand.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: October 12, 2021                    _s/ Jonathan Greenberg_
                                          Jonathan D. Greenberg
                                          United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**